United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>SCOTT A. MCBAIN, in individual and representative capacity as trustee; TANI L. MCBAIN, in individual and representative capacity as trustee; CARNES PIANO & ORGAN CO. OF VALLCO, INC., a California Corporation,<br><br>    Defendants. | Case No.17-cv-01454-VKD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 46 |

Plaintiff Scott Johnson sues for alleged violations of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181, *et seq.* and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51-53. He claims that, due to architectural barriers at the Carnes Piano Store ("Store") in San Jose, California, he was denied full and equal access to the facilities.

Mr. Johnson now moves for summary judgment on all claims for relief. For the most part, defendants do not oppose Mr. Johnson's motion. Nor do they object to his request for $8,000 in statutory damages. However, with respect to his request for injunctive relief, defendants say that they have sold the property and are in the process of closing the Store. Dkt. No. 50. The Court held a hearing on the matter on November 6, 2018. Mr. Johnson appeared. Defendants did not. Upon consideration of the moving and responding papers, as well as the oral arguments presented,

the Court grants Mr. Johnson's motion for summary judgment.[1]

I.    **BACKGROUND**

In view of defendants' statement of non-opposition, for purposes of resolving the present motion, the following material facts are undisputed.

Mr. Johnson is a quadriplegic who cannot walk and has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van with a lift that deploys from the passenger side of the vehicle to accommodate his wheelchair. Dkt. No. 46-4 ¶¶ 2-3. In their answer, defendants admitted that Scott and Tani McBain own the real property where the Store is located and that defendant Carnes Piano & Organ Co. of Vallco, Inc. owns the Store. Dkt. No. 10 ¶¶ 2-18.

Mr. Johnson visited, or attempted to visit the Store on August 17, 2016, September 20, 2016, October 12, 2016, October 26, 2016, November 9, 2016, November 16, 2016, and January 23, 2017. Dkt. No. 46-4 ¶¶ 4, 14. He says that defendants failed to provide and maintain accessible parking and an accessible path of travel inside the Store. Specifically, Mr. Johnson claims that there were no parking spaces designated for use by disabled persons, no parking spaces with an adjacent access aisle, no signage indicating disabled parking, no "NO PARKING" lettering in any space, and no International Symbol of Access in any space. Once inside the Store, Mr. Johnson says that the aisles were too narrow for him to navigate with his wheelchair, and that merchandise and merchandise displays were stacked in some places, restricting the width of the aisles. *Id.* ¶¶ 5-6, 11, 15-16, Ex. 3. Although Mr. Johnson says that he would like to return to the Store, these access barriers caused him "difficulty, discomfort and frustration" and deterred him from patronizing the Store. *Id*. ¶¶ 7-9, 12-14, 17-19.

On February 13, 2017, Tyler Anderson, an investigator hired by Mr. Johnson, visited the Store. Dkt. No. 46-6 ¶¶ 1, 3. Mr. Anderson avers that he did not find any parking space designated for use by disabled persons, no parking space with an adjacent access aisle, no "NO PARKING" lettering in any space, and no International Symbol of Access in any space. *Id.* ¶ 5. Inside the Store, Mr. Anderson

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

says he measured the aisles and found that they averaged only 18 inches in width. *Id*. ¶¶ 6-9, Ex. 5.

On July 24, 2018, Gary Waters, Mr. Johnson's expert, conducted a site inspection of the Store. Dkt. No. 46-8 ¶¶ 5-10. Mr. Waters' August 13, 2018 report indicates that there now is at least one designated parking space for use by disabled persons, with an adjacent access aisle. Dkt. No. 46-9 at 13. Nevertheless, Mr. Waters concluded that several access violations still exist at the Store, including non-compliant "tow away" signage, inaccessible exterior paths of travel due to excessive slopes, and inaccessible interior paths of travel. Dkt. No. 46-9.

On summary judgment, Mr. Johnson now seeks injunctive relief under the ADA, requiring defendants to remedy existing barriers identified by Mr. Waters. He also requests statutory damages of $8,000 under the Unruh Act. For the reasons to be discussed, the Court grants Mr. Johnson's motion.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See Nissan Fire & Marine Ins. Co., Ltd*., 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id*. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit

3

under the governing law. *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id.*

**III. DISCUSSION**

**A. ADA Claim**

Title III of the ADA prohibits discrimination by places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of Title III, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id*. § 12182(b)(2)(A)(iv). "Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." *Id*. § 12181(9).

To prevail on his Title III discrimination claim, Mr. Johnson must show that (1) he is disabled within the meaning of the ADA; (2) defendants are private individuals or entities that own, lease, or operate a place of public accommodation; and (3) he was denied public accommodations by defendants because of his disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). To succeed on an ADA claim based on architectural barriers, Mr. Johnson "must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable." *Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal., May 18, 2018) (citations omitted).

As none of the relevant material facts is disputed, Mr. Johnson has demonstrated his Article III standing to pursue an ADA claim for relief. Dkt. No. 46-4; *see Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014) ("Indeed, '[d]emonstrating an intent to return to a non-compliant accommodation is but one way for an injured plaintiff to establish Article III

4

standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is *deterred* from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there.'") (quoting *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 949 (9th Cir. 2011)).

Mr. Johnson has also established that he is disabled within the meaning of the ADA and that he was denied public accommodations because of his disability. Dkt. No. 46-4. Under the ADA, a physical impairment that substantially affects a major life activity, such as walking, qualifies as a disability. 42 U.S.C. §§ 12102(1)(A), 12102(2)(A). Additionally, the Store is a place of public accommodation. *Id*. § 12181(7)(E) (listing "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment" as a "public accommodation").

Some barriers concerning accessible parking spaces appear to have been remedied, and Mr. Johnson's ADA claim therefore is moot as to those matters. However, defendants do not dispute that there are existing access barriers that violate the ADA Accessibility Guidelines ("ADAAG"). Dkt. Nos. 46-8, 46-9. For example, with respect to paths of travel inside the Store, Mr. Johnson notes that the 1991 ADAAG Standards provide that "[s]helves or display units allowing self-service by customers in mercantile occupancies shall be located on an accessible route complying with [Section] 4.3." 1991 ADAAG, 28 C.F.R. Pt. 36, App. A § 4.1.3(12)(b). Section 4.3, in turn, provides that an accessible route must be at least 36 inches wide. *Id*. § 4.3.3. Although Mr. Johnson's expert identified barriers Mr. Johnson did not encounter, "an ADA plaintiff who establishes standing as to encountered barriers may also sue for injunctive relief as to unencountered barriers related to his disability." *Pier 1 Imports (U.S.) Inc.*, 631 F.3d at 944; *see also Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008) ("We hold that Doran has standing to sue for injunctive relief for all barriers in the North Harbor 7-Eleven store related to his specific disability, including those identified in his expert's site inspections.").

Mr. Johnson points out that installing ramps and rearranging tables, chairs, vending machines display racks, and other furniture are among the types of repairs that are considered readily achievable. 28 C.F.R. § 36.304(b)(1), (4). Additionally, he has submitted evidence

5

showing that defendants do not contest that removal of the identified barriers is readily achievable. Dkt. No. 46-3 ¶ 8; Dkt. No. 46-11. Further, as noted above, defendants admitted in their answer that they own, lease, or operate the Store and the real property on which the Store is located. Dkt. No. 10 ¶¶ 2-18.

Nevertheless, in their statement of non-opposition to the present motion, defendants now say that they have sold the property and are in the process of closing the Store. Dkt. No. 50. The ADA provides only injunctive relief, not monetary damages, for private litigants. *MJ Cable., Inc.*, 481 F.3d at 730 (citing *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002)). "'An ADA claim for injunctive relief is moot if . . . the defendant no longer owns or controls the challenged premises.'" *Arroyo v. Aldabashi*, No. 16-cv-06181-JCS, 2018 WL 4961637, at *4 (N.D. Cal., Oct. 15, 2018) (quoting *Johnson v. Rai Rocklin Investments, LLC*, No. 2:15-CV-02698-KJM-EFB, 2017 WL 3421848, at *2 (E.D. Cal. Aug. 9,2017)). Even so, defendants have submitted no evidence regarding the purported sale of the property or their stated intent to close the Store. They have thus failed to demonstrate that there is a genuine issue of material fact as to Mr. Johnson's claim for injunctive relief. Mr. Johnson's request for injunctive relief under the ADA therefore is granted.

### B. Unruh Act Claim

"Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *MJ Cable, Inc.*, 481 F.3d at 731 (citing Unruh Act, Cal. Civ. Code § 51(f)). Thus, to the extent Mr. Johnson has an ADA claim based on the existing identified barriers, he also has an Unruh Act claim based on those barriers.

While monetary damages are not available in private suits under Title III of the ADA, the Unruh Act provides a minimum statutory damages award of $4,000 "for each occasion an individual is denied equal access to an establishment covered by the Unruh Act . . .." *Ridola*, 2018 WL 2287668 at *15 (citing Cal. Civ. Code § 52(a)). Mr. Johnson "need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000." *MJ Cable, Inc.*, 481 F.3d at 731. Although he made several visits to the Store between August 2016 and January 2017, Mr. Johnson seeks statutory damages of only $8,000, i.e., $4,000 for his first personal encounter

inside the Store and one for deterrence. Because defendants do not oppose that request, Mr. Johnson's request for $8,000 in statutory damages is granted.

## IV. CONCLUSION

Based on the foregoing, Mr. Johnson's motion for summary judgment is granted as to all claims for relief. Mr. Johnson is awarded $8,000 in damages. Additionally, defendants shall, in compliance with the ADAAG, remove the barriers identified by Mr. Waters and recited in his August 13, 2018 report (Dkt. No. 46-9) as follows:

**Accessible Parking Space**

1. Tow-Away Sign: Provide a compliant sign with permanent lettering indicating the reclaim information.
2. Accessible Parking Space—Access Aisle: The access aisle shall be marked by a blue border on all four sides of the element.

**Site Arrival Point**

3. Pedestrian Access Route from the Public Sidewalk—Cross Walk: Remove and replace the asphalt paving as required to provide a compliant slope.
4. Pedestrian Access Route from the Public Sidewalk—Cross Walk: Remove and replace the asphalt paving as required to provide a compliant cross slope.

**Walk Along Front of Retail Store**

5. Cross Slope: Remove and replace the concrete walk as required to provide a compliant cross slope.

**Entry Door Nearest Accessible Parking Space**

6. Opening Force: Adjust the door closer on the entry door nearest the accessible parking space so the opening force is not more than 5 lbf.
7. Closing Speed: Adjust the door closer on the entry door nearest the accessible parking space so the closing speed is not less than 5 seconds.
8. Door Surface: Provide a cover plate at the bottom 10 inches of the door on the entry door nearest the accessible parking space at the push side. The cover shall return to the glass surface to close the gap.

9. <u>International Symbol of Accessibility</u>: Provide a sign with the ISA on the entry door nearest the accessible parking space if the entry door furthest from the accessible parking space is not an accessible entry door.

**Entry Door Furthest From Accessible Parking Space**

10. <u>Directional Signage</u>: If the entry door furthest from the accessible parking space is not to be used as an entry, provide signage indicating the location of the accessible entry door.

**Main Show Room**

11. <u>Accessible Route</u>: A minimum clear aisle width of 36 inches must be provided through the showroom to provide a person with disabilities a similar opportunity to view the available pianos and organs as provided an able-bodied customer. Sufficient access aisle space must be provided so that able-bodied customers and customers with disabilities may be served similarly.

**Smaller Show Room: Entry Door From Main Aisle Opposite Main Entry Door**

12. <u>Pull Side Maneuvering Space</u>: Move the piano and maintain a clear maneuvering space at both the pull and push side of the entry door on the main aisle opposite the main entry door.

13. <u>Push Side Maneuvering Space</u>: Eliminate the change in floor level at the pull side maneuvering space of the entry door on the main aisle opposite the main entry door, and the transition between floor levels shall be beveled at not more than 1:20 outside the pull side maneuvering space of that door.

14. <u>Closing Speed</u>: Adjust the door closer of the entry door on the main aisle opposite the main entry door so that the closing speed is not less than 5 seconds.

15. <u>Path of Travel—Change in Level</u>: Remove the elevated floor level to provide an accessible route through the showroom between sets of double doors without a change in level or provide a compliant transition between floor levels. Any transition between floor levels must have a slope of not more than 1:20 (5%).

This order for injunctive relief binds the parties, as well as the parties' officers, agents, servants,

8

employees, and attorneys.

The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: November 6, 2018

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge